UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MANUEL FLORES GUADARRAMA, et al., | Case No. 2:26-cv-00193-TMC |
| Petitioners, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| BRUCE SCOTT, et al., | |
| Respondents. | |

## I.    INTRODUCTION

Before the Court is a petition for writ of habeas corpus filed on January 19, 2026 by Manuel Flores Guadarrama and Carlos Enrique Navarro Ceja, both of whom are detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On February 3, Federal Respondent Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), filed a return to the habeas petition.[1] Dkt. 4. On February 9, Petitioners filed a traverse. Dkt. 7.

---

[1] The petition listed Alejandro Mayorkas, DHS Secretary under former President Joseph Biden, as Respondent. Ms. Noem replaced Mr. Mayorkas as DHS Secretary in January 2025. Ms. Noem has been substituted for Mr. Mayorkas as Respondent under Federal Rule of Civil Procedure 25(d).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 1

The habeas petition is now ripe for the Court's review. For the reasons that follow, the Court DENIES the petition for writ of habeas corpus.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    BACKGROUND

### A.    Manuel Flores Guadarrama

Neither party offers specific facts about Flores Guadarrama's entry into the United States and apprehension by immigration officers. Flores Guadarrama alleges that on December 7, 2025, he was issued a Notice to Appear ("NTA"). Dkt. 1 at 3. On January 26, 2026, an Immigration Judge ("IJ") denied Flores Guadarrama's request for bond, reasoning that he lacked jurisdiction to grant the bond request because Flores Guadarrama is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Dkt. 7-1 at 4. In the alternative, the IJ ordered that even if he had jurisdiction to consider the request, he would deny bond because Flores Guadarrama presents a flight risk. *Id.* at 5.

### B.    Carlos Enrique Navarro Ceja

Navarro Ceja initially entered the United States without inspection. Dkt. 6 ¶ 5. On November 15, 2021, he filed a Form I-360 petition for special immigrant status, a Form I-485 application for adjustment of status, and a Form I-313 application for advance parole. *Id.* ¶ 6; *see* Dkts. 5-1, 5-3. On April 5, 2022, United States Citizenship and Immigration Services ("USCIS")

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 2

granted him advance parole. Dkt. 5-1. On November 13, 2023, he applied for advance parole a second time; USCIS granted that application on May 10, 2024. Dkt. 5-2.

On November 20, 2024, Navarro Ceja departed the United States for Mexico. Dkt. 6 ¶ 9. He returned to the United States on December 14, 2024 and was paroled into the country for one year based on his previously approved advance parole. *Id.* ¶ 10. Two days later, USCIS approved his I-360 petition and granted him deferred action "for a period of 15 months from the date of this notice, unless terminated earlier by USCIS for reasonable cause and upon appropriate notice." Dkt. 5-3 at 2–3.

On October 20, 2025, USCIS denied Navarro Ceja's application for adjustment of status. Dkt. 6 ¶ 12. On December 3, he was apprehended by Immigration and Customs Enforcement ("ICE") agents and received an NTA charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). Dkts. 5-4, 5-6. On December 23, he conceded the charge of removability. Dkt. 6 ¶ 16. On January 14, an IJ denied his request for bond on the grounds that he is subject to mandatory detention as an "arriving alien." Dkt. 5-7; *see* 8 U.S.C. § 1225(a)(1), (b)(2). Navarro Ceja then requested a subsequent bond hearing, which the IJ denied because he had "failed to establish material changed circumstances." Dkt. 7-1 at 17–18. On January 27, DHS amended the charges against him to remove the charge under § 1182(a)(6)(A)(i) and add a charge under § 1182(a)(7)(A)(i)(I). Dkt. 5-8 at 4; Dkt. 6 ¶ 18. On February 4, Navarro Ceja filed an emergency request for humanitarian parole from ICE. Dkt. 7-1 at 10–12.

## IV.    DISCUSSION

Petitioners argue that Respondents have unlawfully subjected them to mandatory detention under § 1225(b)(2). Dkt. 1 at 4. They contend that the statute governing their detention is 8 U.S.C. § 1226(a), which would entitle them to consideration for release on bond. *Id.* As explained below, Flores Guadarrama is lawfully detained regardless of whether that detention is

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 3

governed by § 1225(b)(2) or § 1226(a), and Navarro Ceja is subject to mandatory detention based on the denial of his application for adjustment of status. As a result, habeas relief is not warranted for either Petitioner.

### C.    Flores Guadarrama is lawfully detained under the Immigration and Nationality Act.

Flores Guadarrama argues that despite the IJ's flight risk finding, he is entitled to immediate release because he has been detained under an incorrect statutory framework. Dkt. 7 at 4. In the alternative, he requests a second bond hearing before an IJ. *Id.* at 5.

The Court has addressed this exact legal question in several habeas cases over the past four months. *See, e.g.*, *Castulo-Cerro v. Hermosillo*, No. 2:26-CV-00437-TMC, 2026 WL 395324, at *2 (W.D. Wash. Feb. 12, 2026); *Aburto Lopez v. Scott*, No. 2:25-CV-02541-TMC, 2026 WL 194234, at *2 (W.D. Wash. Jan. 26, 2026); *Vasquez Garcia v. Hermosillo*, No. 2:25-CV-02597-TMC, 2026 WL 81783, at *1 (W.D. Wash. Jan. 12, 2026); *Corrales Castillo v. Wamsley*, No. 2:25-CV-02172-TMC, 2025 WL 3204370, at *2–3 (W.D. Wash. Nov. 17, 2025). As the Court explained in those cases, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Although Flores Guadarrama challenges one basis for his confinement—mandatory detention under § 1225(b)(2)—the IJ's determination that he presents a flight risk is a separate basis for the "legality of [his] custody." *See id.* In other words, even if Respondents treated him as subject to the discretionary detention regime of § 1226(a), he would remain in detention under that separate finding. Moreover, Flores Guadarrama does not present any evidence of changed circumstances that might lead the IJ to find differently at a renewed bond hearing.

Because Flores Guadarrama has not demonstrated by a preponderance of the evidence that "the fact or duration of his confinement" violates any law, *see Preiser*, 411 U.S. at 489, habeas relief is not available to him.

**D.      Navarro Ceja is lawfully detained based on the denial of his request for adjustment of status.**

Federal Respondent argues that Navarro Ceja's request for habeas relief should be denied because he last entered the United States as an advance parolee and is therefore an "arriving alien" subject to mandatory detention. Dkt. 4 at 3–4. Navarro Ceja maintains that he is entitled to release from custody "because detention is untethered to removal, no bond mechanism exists, and DHS has exclusive but unexercised parole authority." Dkt. 7 at 4. He asserts that he has "a recognized humanitarian immigration status" based on the approval of his Form I-360. *Id.* at 2–4.

Parole is a "legal fiction" under which a noncitizen "is allowed to be physically present in the United States for a specific purpose." *Barney v. Rogers*, 83 F.3d 318, 320 n.1 (9th Cir. 1996). If an applicant for adjustment of status intends to leave the United States temporarily, he may apply for "'advance parole,' which allow[s] him to travel briefly outside the United States and to reenter lawfully." *Navarro-Aispura v. I.N.S.*, 53 F.3d 233, 234 (9th Cir. 1995); *see* 8 C.F.R. § 212.5(f). A noncitizen who reenters the United States as an advance parolee qualifies as "an 'arriving alien' under the applicable statutes and regulations," *Ibragimov v. Gonzales*, 476 F.3d 125, 138 (2d Cir. 2007), except for the provisions governing expedited removal. *See Bona v. Gonzales*, 425 F.3d 663, 667–68 (9th Cir. 2005); 8 U.S.C. § 1182(d)(5)(A) (providing that parole "shall not be regarded as an admission" to the United States). The Immigration and Nationality Act's ("INA") implementing regulations define "arriving alien" as follows:

> Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States

waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1.2. In addition, "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.*

If an advance parolee's application for adjustment of status is denied, "he or she will be treated as an applicant for admission, and subject to the provisions of [8 U.S.C. §§ 1182 and 1225]." 8 C.F.R. § 245.2(a)(4)(ii)(B). Section 1225(b)(2) subjects "arriving aliens" to mandatory detention during the pendency of their removal proceedings. 8 U.S.C. § 1225(a)(1), (b)(2). And once advance parole has been revoked, the advance parolee's "status reverts to that which he had at the time he was inspected and paroled into the country, and 'thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Ibragimov*, 476 F.3d at 132 (quoting 8 U.S.C. § 1182(d)(5)(A)). A denial of adjustment of status and subsequent revocation of advance parole are "discretionary determination[s]" that may not be reviewed by federal courts absent a claim that those decisions violated a noncitizen's constitutional rights. *Hassan v. Chertoff*, 593 F.3d 785, 788–90 (9th Cir. 2010).

Navarro Ceja entered the United States as an "arriving alien" in December 2024 and was granted deferred action shortly thereafter. Dkt. 6 ¶ 10; Dkt. 5-3. USCIS denied his application for adjustment of status in October 2025. Dkt. 6 ¶ 12. He was then detained and issued an NTA (Dkt. 5-6), which constituted notice that the government had terminated his advance parole. 8 C.F.R. § 212.5(e)(2)(i) ("When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified."); *Gonzales-Gandini v. Holder*, 384 F. App'x 658, 659 (9th Cir. 2010) (concluding that the issuance of an NTA terminated a noncitizen's advance parole). Navarro Ceja does not argue that the denial of his application for adjustment of status or the termination of his parole denied him

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 6

due process. These decisions thus provide an unreviewable basis for his detention under § 1225(b) as an "arriving alien."

To contest the validity of his detention, Navarro Ceja points to the government's December 16, 2024 approval of his Form I-360 Petition and grant of deferred action. Dkt. 7 at 2–4. But that document provided that "[t]he approval of this visa petition does not in itself grant any immigration status and does not guarantee that the beneficiary will subsequently be found to be eligible for . . . adjustment of status." Dkt. 5-3 at 3. It also explained that the grant of deferred action would "remain in effect for a period of 15 months . . . unless terminated earlier by USCIS for reasonable cause and upon appropriate notice." *Id.* at 2. Arguing that he is afforded special protections under the Violence Against Women Act ("VAWA"), Navarro Ceja asserts that USCIS "denied his I-485 solely under INA § 212(a)(9)(C)—a ground that Congress has made uniquely waivable for VAWA self-petitioners upon a showing of nexus between abuse and the conduct giving rise to inadmissibility." Dkt. 7 at 3. But as Navarro Ceja acknowledged in his application for humanitarian parole from ICE, it is DHS, not this Court, that has jurisdiction to determine his eligibility for additional parole. *See* Dkt. 7-1 at 12.

Finally, as an alternative to release, Navarro Ceja requests that the Court order DHS to adjudicate his request for parole. Dkt. 7 at 5. This relief is not warranted, as he has not shown a sufficient nexus between his pending parole application and his request for habeas relief, nor has he shown any failure by the agency to consider that application in conformance with due process.

Like Flores Guadarrama, Navarro Ceja is subject to detention based on a discretionary determination that this Court may not review. He is thus not entitled to habeas relief.

## V.   CONCLUSION

The petition for writ of habeas corpus (Dkt. 1) is DENIED.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 7

Dated this 24th day of February, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 8